**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GREGORY DEMPSEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 CV 812 |
| | ) | Hon. Marvin E. Aspen |
| RICHARD NATHAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Gregory Dempsey ("Dempsey" or "Plaintiff"), filed an eleven-count complaint alleging various state and federal law claims against Defendants Richard Nathan ("Nathan"), RTC Industries, Inc. ("RTC"), the City of Rolling Meadows ("the City"), and Detective Anthony Peluso of the Rolling Meadows Police Department ("Detective Peluso"). Plaintiff alleges violations of 42 U.S.C. § 1983 against all defendants, as well as state law tort claims of false arrest, malicious prosecution and conversion against Nathan and RTC, and breach of contract and unjust enrichment against RTC. Plaintiff also seeks indemnification from the City for damages arising out of Detective Peluso's actions.

Presently before us are two motions to dismiss Plaintiff's Third Amended Complaint ("amended complaint"). Both motions were filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the first by Nathan and RTC (the "Nathan Defendants"), and the second by the City and Detective Peluso (the "City Defendants"). All Defendants also challenge Plaintiff's standing to bring claims related to his former residence and personal property. For the reasons stated below, we grant both motions in part and deny both motions in part.

**BACKGROUND**

The following facts are drawn from Plaintiff's amended complaint and are accepted as true for the purposes of these Rule 12(b)(6) motions. From 2008 through 2011 Dempsey worked with a two-person startup company to develop a product intended to prevent soccer goals from tipping over and injuring players. (Am. Compl. ¶¶ 8–10.) In May 2011, Dempsey and RTC entered into a proposed partnership/joint venture agreement to further develop and promote the product. (*Id.* ¶ 14.) The parties also drafted a "term sheet," which they agreed would form the basis of the future formal joint venture agreement. (*Id.* ¶¶ 16–17.) Sometime before executing the formal agreement, Dempsey began working at RTC; his employment continued through the end of January 2012. (*Id.* ¶¶ 16, 26, 30; Opp'n to Nathan Defs. MTD at 8.) Nathan Defendants paid Dempsey for the first few months of his work, but then stopped paying him in the fall of 2011. (Am. Compl. ¶ 20.) After that time, he did not receive any compensation from RTC for his work. (*Id.*; Opp'n to Nathan Defs. MTD at 8.) In January 2012, Nathan presented Dempsey with a formal joint venture agreement that was vastly different from the term sheet the parties had agreed to the previous May. (Am. Compl. ¶ 23.) Dempsey refused to agree to the modified terms and left RTC at the end of January. (*Id.* ¶¶ 28–30.)

On February 6, 2012, Nathan told Detective Peluso of the Rolling Meadows Police Department that Dempsey had stolen RTC property. (*Id.* ¶ 31.) On February 27, 2012, Detective Peluso, without a warrant, searched Dempsey's former home and garage. (*Id.* ¶¶ 35–36.) While Detective Peluso was in the home, Nathan sent a truck and two RTC employees to the property to assist with the search. (*Id.* ¶¶ 38–39.) Detective Peluso permitted the RTC employees to search the home and take approximately thirty-two boxes of Dempsey's property back to RTC's office, without making any effort to inventory or photograph the items removed.

(*Id.* ¶¶ 40–43, 67.)  On March 7, 2012, Nathan authorized Detective Peluso to sign a criminal complaint on his behalf, alleging that Dempsey had stolen two pieces of RTC property. (*Id.* ¶ 45.)  Thereafter, Dempsey was arrested and prosecuted.  Dempsey maintains that he was never in unauthorized possession of RTC property, (*id.* ¶ 47), and that Defendants knew the charges against him were false, (*id.* ¶¶ 46, 49).  In August 2012, a jury found Dempsey not guilty on all charges.  (*Id.* ¶¶ 59, 63.)

Based on the facts above, Plaintiff filed a third amended complaint on December 23, 2013 in the Circuit Court of Cook County.  On February 5, 2014, Defendants removed the case to federal court.  Defendants now move to dismiss the third amended complaint in its entirety. In his oppositions to Defendants' motions to dismiss, Plaintiff withdrew his civil conspiracy claim, thus Count V is dismissed.  (Opp'n to Nathan Defs. MTD at 8; Opp'n to City Defs. MTD at 8.)  We address the remaining counts in turn.

## MERITS

### I.    Standing

Plaintiff brings four federal and state law claims that are related to Defendants' conduct towards his former residence and personal property: Count III (§ 1983 Illegal Search); Count IV (§ 1983 Illegal Seizure); Count VII (Conversion); and Count XI (Unjust Enrichment).  In support of these claims, Plaintiff alleges that Defendants illegally searched his home and seized property from his garage in violation of his Fourth Amendment rights.  (Am. Compl. ¶¶ 35–43, 64–69, 85–92.)  He also alleges that Nathan Defendants' wrongfully converted the property removed from Plaintiff's garage for their own use, and that they were thereby unjustly enriched. (*Id.* ¶¶ 108–17, 135–40.)  Defendants argue that these claims should be dismissed because Plaintiff had lost all interest in the property at issue before the search and seizure occurred.  (City Defs. MTD at 4–9; Nathan Defs. MTD at 12–15, 18–19.)  Although not consistently framed as

such, Defendants' arguments are factual challenges to Plaintiff's standing and to our subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Apex Digital Inc. v. Sears, Roebuck & Co*., 572 F.3d 440, 443 (7th Cir. 2009). Because our first duty in every suit is to determine whether we have subject-matter jurisdiction, we must resolve these challenges at the outset. *Johnson v. Wattenbarger*, 361 F.3d 991, 992 (7th Cir. 2004).

There are two types of challenges to standing: facial and factual. Facial challenges require the court to only look at the four-corners of the complaint to determine whether the plaintiff alleged a basis for subject-matter jurisdiction. *Apex*, 572 F.3d at 443. Factual challenges, however, permit the district court to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* at 444 (quoting *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008)). On a factual challenge, when a defendant presents evidence that calls a plaintiff's standing into question "'[t]he presumption of correctness that we accord to a complaint's allegations falls away,' and the plaintiff bears the burden of coming forward with competent proof that standing exists." *Id.* (quoting *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998)). Here, Defendants' standing challenges are factual and thus we will consider evidence outside the pleadings to resolve the issues. *See McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1007 (N.D. Ill. 2012) (considering evidence outside the pleading and finding that plaintiff did not have standing to bring Fourth Amendment claims on motion to dismiss); *Triumph Packaging Grp. v. Ward*, 877 F. Supp. 2d 629, 639 (N.D. Ill. 2012) (considering evidence outside the pleading to dismiss plaintiff's conversion claim for lack of standing).

To find Article III standing, "(1) a plaintiff must have suffered an 'injury in fact:' an invasion of a legally protected interest which is concrete and particularized, and actual and imminent; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision." *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992)). In addition, a plaintiff has standing to bring Fourth Amendment search and seizure claims only if he "had a legitimate expectation of privacy" in the property at issue. *United States v. Carlisle*, 614 F.3d 750, 756 (7th Cir. 2010) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 430 (1978)). Important in this case, a plaintiff typically cannot establish "injury in fact" where it is clear that he does not have an interest in the property that underlies his claims. *See Matter of FedPak Sys., Inc.*, 80 F.3d 207, 213 (7th Cir. 1996) (finding that plaintiff lacked standing to seek a clarification order from the court because it "no longer owns any intellectual property rights" in the subject property); *Duggan v. Terzakis*, 275 F. Supp. 2d 968, 972 (N.D. Ill. 2003) (finding that plaintiffs who did not have a property interest did not have standing to bring state law claims); *see also United States v. 8402 W. 132nd St., Palos Park, Ill.*, 103 F. Supp. 2d 1040, 1042 (N.D. Ill. 2000) ("A court's consideration of a claimant's interest in property is merely a proxy for examining injury in fact."). Likewise, whether the plaintiff had a property or possessory interest in the property at issue is of critical importance to the "legitimate expectation of privacy" inquiry. *Rakas*, 439 U.S. at 148, 99 S. Ct. at 433.

In support of their motion to dismiss, Defendants produced evidence that as of February 18, 2012—nine days before the search and seizure at issue—Plaintiff had lost legal and possessory interest in the real and personal property at issue in this case. (City Defs. MTD at 6–

8; Nathan Defs. MTD at 13–14.)  Specifically, Defendants attached to their motions documents filed with the Circuit Court of DuPage County in the foreclosure proceeding *U.S. Bank National Ass'n as Trustees v. Gregory S. Dempsey et. al.*, No. 10 CH 1164: a Sheriff's Report of Sale and Distribution, an Agreed Motion for Possession and attachments, and an Order Confirming Sale (Order Approving) and Order of Possession.  (City Defs. MTD, Exs. 2, 3, 6; Nathan Defs. MTD, Ex. F.)  These court filings show that Plaintiff's former residence was sold to a third party at a public auction on January 26, 2012, that Plaintiff agreed to surrender possession of the real property on or before February 12, 2012, and that Plaintiff released all rights to his personal property in the garage after February 17, 2012.  (*Id.*)  This evidence is credible and calls into question whether Plaintiff had any legitimate interest in the property on or after February 27, 2012, when the search and seizure occurred.  *See United States v. Curlin*, 638 F.3d 562, 565 (7th Cir. 2011) (finding no expectation of privacy where defendant was evicted from residence two weeks before the alleged search).  By offering reliable evidence that Plaintiff did not have an interest in the disputed property, Defendants sufficiently supported their factual challenge to Plaintiff's standing.  Thus, the burden shifts to Plaintiff to come forward with proof that standing exists.  *Apex*, 572 F.3d at 444.

In his opposition, Plaintiff concedes that he lost ownership of the residence before February 27, 2012 and does not dispute the authenticity of the foreclosure documents attached to Defendants' motions.  Instead, he defends his interest in the property by arguing that the subsequent owner agreed that he could continue to store his personal property in the garage through the end of February.  (Opp'n to City Defs. MTD at 6.)  But, assuming for the moment that such an agreement would be sufficient to confer a property or privacy interest, Plaintiff did not produce *any* evidence to support the existence of the alleged agreement.  Particularly because

the Surrender of Possession agreement, which is signed by Plaintiff, states "[a]ny extension of the Vacate Date must be approved by OWNER *in writing* prior to the Vacate Date," we would expect to see written proof if such an agreement in fact existed. (City Defs. MTD, Ex. 3 (emphasis added).) We find that Plaintiff has not met his "burden of coming forward with competent proof that standing exists" for the claims related to his former residence and personal property. *Apex*, 572 F.3d at 444. Therefore, we dismiss Counts III, IV, VII, and XI for lack of subject-matter jurisdiction. *See Wiegel v. Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 943 (N.D. Ill. 2012) (dismissing unjust enrichment claim for lack of standing where plaintiff failed to establish she suffered injury as a result of defendants conduct); *McGreal*, 892 F. Supp. 2d at 1007 (dismissing § 1983 claims for lack of standing); *Triumph*, 877 F. Supp. 2d at 639 (dismissing conversion claim for lack of standing).

## II.     Rule 12(b)(6) failure to state a claim

Defendants move to dismiss all other counts for failure to state a claim for which relief can be granted. A motion to dismiss under Rule 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specifically, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 540 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007)). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, while a complaint need not give "detailed factual allegations," it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 540 U.S.

at 545, 127 S. Ct. at 1964–65; *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007).  The statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis.  *Twombly*, 540 U.S. at 545, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).  In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

### A. False Arrest (Counts I and II)

Plaintiff seeks to hold all Defendants liable under 42 U.S.C. § 1983 for false arrest (Count I).  In the alternative, Plaintiff claims that Nathan Defendants are liable for false arrest under Illinois state tort law (Count II).

#### 1. City of Rolling Meadows

We will first address Plaintiff's false arrest claim against the City.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the defendant deprived the plaintiff of a constitutional right, and (2) the defendant acted under color of state law.  *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003) (citing *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996)).  In *Monell v. Department of Social Services of the City of New York*, the Supreme Court held that a local government cannot be liable under § 1983 for an injury caused solely by its employees or agents.  436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978).  Therefore, to state a § 1983 claim against a municipality, the plaintiff must allege that the constitutional injury was caused by the municipality's policies or customs.  *Id.* at 694, 98 S. Ct. at 2037–38; *Estate of Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).  There are three ways that a plaintiff can show an official policy or custom: "(1) an express policy that causes a constitutional

deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Estate*, 506 F.3d at 515 (citing *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007)). Here, the City argues that Plaintiff failed to state a claim for municipal liability because the complaint is devoid of any allegation that the City had a policy or custom that led to the false arrest. (City Defs. MTD at 4.) We agree. Although Plaintiff makes some attempt to claim that the City's policies caused the alleged illegal search and seizure, neither the amended complaint nor Plaintiff's opposition assert that a City policy or custom caused his arrest. Accordingly, we find that Plaintiff failed to state a *Monell* claim for false arrest and dismiss Count I against the City.

### 2. Detective Peluso

Next, we turn to Plaintiff's false arrest claim against Detective Peluso. The amended complaint does not specify whether Plaintiff is suing Detective Peluso in his official or individual capacity. This inquiry is important because "[w]hen an officer is sued in his official capacity, a plaintiff must satisfy the standard set forth in *Monell*." *Eckert v. City of Chi.*, No. 08 C 7397, 2009 WL 1409707, at *4 (N.D. Ill. May 20, 2009) (citing *Grieveson v. Anderson*, 538 F.3d 763, 771–73 (7th Cir. 2008)). In other words, an officer can be liable for a § 1983 violation in his official capacity only if he acted pursuant to an official policy or custom. On the other hand, an individual capacity claim requires only "a showing of personal involvement in the alleged constitutional deprivation by the government actor." *Aleman v. Dart*, No. 08 CV 6322, 2010 WL 502755, at *7 (N.D. Ill. Feb. 9, 2010) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Since we previously found that Plaintiff failed to state a *Monell* claim for false

arrest, Plaintiff may only proceed against Detective Peluso if he sufficiently alleges an individual capacity claim.

Detective Peluso argues that Plaintiff's false arrest claim should be dismissed because the amended complaint itself establishes that he had probable cause for the arrest. (City Defs. MTD at 12–15.) A false arrest claim requires proof that an arrest was made without probable cause. *Brooks v. City of Chi.*, 564 F.3d 830, 832 (7th Cir. 2009) (citing *Askew v. City of Chi.*, 440 F.3d 894, 895 (7th Cir. 2006)). Therefore, if Detective Peluso had probable cause for the arrest, then Plaintiff's false arrest claim would be barred. *See Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (explaining that probable cause is an absolute defense to a false arrest claim). Probable cause exists "if at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2013) (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)). Detective Peluso asserts that when a reasonably credible witness reports that a suspect has committed a crime, an officer has sufficient probable cause to arrest the suspect. (City Defs. MTD at 13.) In this case, Detective Peluso argues, it is clear that he had probable cause to arrest Plaintiff because the amended complaint concedes that the arrest was a direct result of Nathan's statements. (*Id.* at 14.) While Detective Peluso is correct that incriminating statements by a witness can provide probable cause, an officer cannot reasonably rely on those statements if he knows that they are false. *See Lawson v. Veruchi*, 637 F.3d 699, 704 (7th Cir. 2011) ("Submitting a knowingly false statement precludes reliance on an arrest warrant."); *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985) ("If an officer submitted an affidavit that contained statements he knew to be false or would have

known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he cannot be said to have acted in an objectively reasonable manner.")

The amended complaint alleges that Detective Peluso signed the criminal complaint that led to his arrest, and that all Defendants—including Detective Peluso—knew the criminal charges were false.  (Am. Compl. ¶¶ 45, 49.)  Because Plaintiff alleges that Detective Peluso knew the charges were false, Plaintiff did not plead himself out of his false arrest claim.[1]  Construing the allegations in a light most favorable to Plaintiff, we find that the amended complaint sufficiently states a § 1983 claim for false arrest against Detective Pelsuo in his individual capacity.  Accordingly, we deny Detective Peluso's motion to dismiss Count I.

### 3. Nathan and RTC

Plaintiff brings false arrest claims against Nathan Defendants under both federal and state law.  We will address the federal claim first.  Nathan Defendants, who are private citizens, argue that Plaintiff failed to state a § 1983 claim for false arrest because he did not allege that they acted under color of law.  (Nathan Defs. MTD at 6–7.)  A private citizen cannot be sued under § 1983 unless he acts under color of law by "becom[ing] a public officer pro tem or conspir[ing] with a public employee to deprive a person of his constitutional rights."  *Wilson v. Price*, 624 F.3d 389, 394 (7th Cir. 2010) (citing *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002)).  In his opposition, Plaintiff withdrew the claim that Nathan Defendants conspired with City Defendants to deprive him of his Fourth Amendment rights.  (Opp'n to Nathan Defs. MTD at 8;

---

[1]  Defendants ask us to rely on an affidavit by Detective Peluso to find that he had a good faith basis for the arrest, but we will not consider evidence outside the pleadings on a Rule 12(b)(6) challenge.  *See* Fed. R. Civ. P. 12(d); *Tri-Gen Inc. v. Int'l Union of Operating Engineers, Local 150, AFL-CIO*, 433 F.3d 1024, 1029 (7th Cir. 2006).

Opp'n to City Defs. MTD at 8.)  Therefore, to state a § 1983 claim, Plaintiff must allege that Nathan Defendants became public officers pro tem.

A private citizen acts as a public officer pro tem when he takes on a public function, such as when the police deputize private citizens in an emergency situation to help them enforce the law.  *Proffitt*, 279 F.3d at 507–08; *Patterson v. Burge*, No. 03 C 4433, 2010 WL 3894433, at *4 (N.D. Ill. Sept. 27, 2010).  Here, the amended complaint does not allege that Nathan himself arrested Plaintiff or that the police authorized him to do so.  Instead, Plaintiff alleges that Nathan authorized Detective Peluso to sign the criminal complaint that led to Plaintiff's arrest.  (Am. Compl. ¶ 45.)  But filing a criminal complaint is not a public function.  Indeed, "[a] private citizen does not become a policeman by complaining to a policeman." *Proffitt*, 279 F.3d at 508. Moreover, Plaintiff's opposition—which argues that Nathan Defendants assumed pro tem status during the alleged search and seizure—likewise fails to articulate how the Nathan Defendants became private citizens pro tem in relation to his arrest.  Accordingly, we grant the Nathan Defendants' motion to dismiss Count I.

Next, we turn to Plaintiff's common law false arrest claim.  Nathan Defendants raise three separate arguments in support of their motion to dismiss Count II.  First, they argue that the claim is barred because probable cause existed for the arrest.  (Nathan Defs. MTD at 7–9.)  Since the elements of false arrest under Illinois law are essentially the same as under § 1983, our previous conclusion that Plaintiff sufficiently alleged lack of probable cause is also applicable here.  *See Padilla v. City of Chi.*, 932 F. Supp. 2d 907, 921 (N.D. Ill. 2013).

Nathan Defendants' second challenge to this claim is similar to their first, but even less persuasive.  Defendants argue that false arrest and malicious prosecution claims are precluded, apparently in all cases, where the plaintiff was arrested pursuant to a complaint.  (Nathan Defs.

MTD at 9.)  But when a complaint is based on information that the defendants know is false—as Plaintiff alleges in this case—defendants are not shielded from liability.  *Guzell v. Hille*r, 223 F.3d 518, 519–20 (7th Cir. 2000) ("Police are entitled to base an arrest on a citizen complaint . . . without investigating the truthfulness of the complaint, unless—this turns out to be an important qualification—they have reason to believe it's fishy." (citing *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 200 (7th Cir. 1985))); *see Bennett v. Holman*, No. 95 C 2472, 1997 WL 158333, at *1 (N.D. Ill. Mar. 31, 1997) (rejecting defendants' argument that a signed complaint provided probable cause where plaintiff alleged that defendants knew plaintiff was innocent).  In fact, an arrest based on an intentionally false complaint is precisely the type of conduct that could lead to a successful false arrest claim.

Finally, Nathan Defendants argue that Count II should be dismissed because Plaintiff's arrest was not based solely on the information they provided to Detective Peluso.  (Nathan Defs. MTD at 9–12.)  In addition to lack of probable cause, to state a claim for false arrest against a private party, a plaintiff must further plead that the private defendant "participated" in making the arrest.  *Hegwood v. City of Berwyn*, No. 09 C 7344, 2010 WL 5232281, at *4 (N.D. Ill. Dec. 16, 2010) (citing *Odorizzi v. A.O. Smith Corp.*, 452 F.2d 229, 231–32 (7th Cir. 1971)).  Contrary to Nathan Defendants' contention, a plaintiff can show participation by alleging *either* that the defendant "directed an officer to arrest the plaintiff" *or* that that defendant "procured the arrest by supplying information that was the sole basis of the arrest."  *Schmidt v. City of Lockport, Ill.*, 67 F. Supp. 2d 938, 946 (N.D. Ill. 1999) (quoting *Odorizzi*, 452 F.2d at 231); *see Carey v. K-Way, Inc.*, 312 Ill. App. 3d 666, 670, 728 N.E.2d 743, 748 (1st Dist. 2000) (affirming summary judgment against plaintiff where there was no evidence that defendant was the "sole source of the information" or that he "requested" that plaintiff be arrested).

Here, Plaintiff alleges both that Nathan Defendants directed Detective Peluso to sign the criminal complaint that led to his arrest, and that his arrest was based solely on information provided by Defendants. Specifically, Plaintiff's amended complaint alleges that Nathan "directed and authorized" Detective Peluso to sign a criminal complaint on his behalf, "thereby leading to Plaintiff's arrest." (Am. Compl. ¶ 45.) He further alleges that Nathan knew the information he provided Detective Peluso was false, (*id.* ¶¶ 46, 79), that "Defendants were acting intentionally, willfully and wantonly and in furtherance of the interests of Defendant, RTC Industries, Inc.," (*id.* ¶ 80), that the criminal complaint "was based solely on the false information provided to Detective Peluso by Nathan," (*id.* ¶ 48), and that Defendants therefore lacked probable cause for his arrest, (*id.* ¶ 79). These allegations are sufficient to state a claim for common law false arrest against Nathan Defendants.

Defendants nonetheless urge us to consider Detective Peluso's police report, which is not cited in or attached to Plaintiff's operative amended complaint, to find as a factual matter that the arrest and prosecution were not based solely on Nathan's statements. (Nathan Defs. MTD at 10–12.) The first problem with Defendants' argument is that they ignore the fact that a plaintiff may also state a claim for false arrest by alleging that a private citizen "directed" the arrest. *See Schmidt*, 67 F. Supp. 2d at 946 ("The law in Illinois and in this circuit therefore holds that a defendant may be liable for false arrest, even if he is not the arresting officer's sole source of information, if he 'go[es] beyond providing the information leading to the arrest and actually request[s] and obtain[s] the arrest.'" (quoting *Doe v. City of Chi.*, 39 F. Supp. 2d 1106, 1114 (N.D. Ill. 1999))). In light of the fact-specific nature of this inquiry, we concluded above that Plaintiff sufficiently alleged a claim for false arrest on this basis. *See Gvozden v. Mill Run Tours, Inc.*, No. 10 CV 4595, 2011 WL 1118704, at *5 (N.D. Ill. Mar. 28, 2011).

Defendants' argument also fails because the police report is not part of the pleadings and thus we cannot consider it on a Rule 12(b)(6) motion.  In this circuit, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).  Defendants argue that we can consider the police report as part of the pleadings because Plaintiff quoted from it in his original complaint.  (Nathan Defs. MTD at 5–6.)  The Seventh Circuit has explained, however, that an amended complaint supersedes all earlier pleadings, and statements and allegations in the earlier pleadings are not considered judicial admissions.  *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) ("An amended pleading ordinarily supersedes the prior pleading.  The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading and becomes functus officio." (quoting *Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir. 1955))); *see, e.g.*, *Vincent v. Williams*, 279 Ill. App. 3d 1, 6, 664 N.E.2d 650, 654 (1st Dist. 1996) (finding the trial court erred by taking judicial notice of a police report attached to the plaintiff's prior complaint on motion to dismiss).  Since Plaintiff's operative complaint does not refer to the police report, we will not consider it as part of the pleadings.  Therefore, based on the amended complaint alone, we deny Nathan Defendants' motion to dismiss Count II.

### B. Malicious Prosecution (Count VI)

Plaintiff also alleges a common law claim for malicious prosecution against the Nathan Defendants.  The elements of malicious prosecution under Illinois law are: "(1) commencement of criminal proceedings by the defendants; (2) termination of that matter in favor of the plaintiff; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages." *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009) (citing *Swick v. Liautaud*, 169 Ill.2d 504, 511, 662 N.E.2d 1238, 1242 (Ill. 1996)); *see Swearnigen–El v.*

*Cook County Sheriff's Dept.*, 602 F.3d 852, 863 (7th Cir. 2010). Nathan Defendants argue that Plaintiff's malicious prosecution claim should be dismissed on the same basis it sought to dismiss the common law false arrest claim: Defendants had probable cause for the prosecution; the prosecution was conducted pursuant to a complaint; and the prosecution was not solely based on information provided by the Nathan Defendants. These arguments fail at this stage for the same reasons discussed above.

Plaintiff alleges that Nathan Defendants maliciously instituted charges against him for the alleged theft of RTC property knowing those charges were false. (Am. Compl. ¶¶ 100–101, 106). He further states that Nathan Defendants' statements to Detective Peluso were the "sole basis of the prosecution," that no probable cause existed, and that he was ultimately found not guilty at trial. (*Id.* ¶¶ 50, 63, 102, 105). As a result, Plaintiff also claims that he suffered damages. (*Id.* ¶¶ 103, 107.) Plaintiff's allegations are sufficient to state a claim for malicious prosecution under the liberal notice pleading standards. Thus, we deny Nathan Defendants' motion to dismiss Count VI.

### C. Indemnification (Count VIII)

Having dismissed Counts I, III, IV, and V against the City, the only remaining claim against it is indemnification for judgments arising out of Detective Peluso's conduct. Plaintiff brings its indemnification claim under the Illinois Tort Immunity Act, 745 ILCS 10/9-102, which directs municipalities to pay compensatory damage judgments for torts committed by their employees while acting within the scope of their employment. The City argues that Plaintiff cannot bring a cause of action pursuant to Section 9-102 until after judgment is obtained against the employee. (City Defs. MTD at 20–21.) To the contrary, the Seventh Circuit has held that plaintiffs need not wait until after a judgment is final to proceed under Section 9-102. *Wilson v.*

*City of Chi.*, 120 F.3d 681, 685 (7th Cir. 1997). Indeed, "courts in this district routinely [allow] plaintiffs to file Section 9-102 indemnity claims prior to the finding of municipal liability." *Williams v. City of Chi.*, No. 11 C 1105, 2014 WL 3787422, at *6 (N.D. Ill. July 30, 2014) (citing *Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 822–23 (N.D. Ill. 2006)). Accordingly, we deny the City's motion to dismiss Plaintiff's indemnification claim.

### D. Breach of Contract (Count IX)

In addition to Plaintiff's civil rights claims, his amended complaint states breach of contract (Count IX) and unjust enrichment (Count X) claims against RTC related to an alleged employment agreement between the parties. We address the breach of contract claim first.

Plaintiff alleges that RTC breached the parties' employment contract by failing to compensate him for five to six months of work. RTC argues that this claim must be dismissed because Plaintiff has not sufficiently pled the existence of a contract or the nature of the breach. A claim for breach of contract under Illinois law requires the Plaintiff to establish: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (quoting *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 14, 845 N.E.2d 22, 30 (1st Dist. 2006)). In his amended complaint, Plaintiff alleges that in May 2011 he accepted a proposed partnership/joint venture agreement with RTC, which was founded on an agreed "term sheet." (Am. Compl. ¶¶ 14, 17.) RTC argues that this term sheet cannot be the basis for the alleged employment contract because it does not contain any employment terms and expressly denies being a binding contract. (Nathan Defs. MTD at 17.) In his opposition, Plaintiff confirms that the term sheet is not the root of the alleged employment contract. (Opp'n to Nathan Defs. MTD at 8.) Instead, Plaintiff's

claim is that the term sheet was to be the basis for the future joint venture agreement, and in return for his tentative acceptance of that proposed agreement the Nathan Defendants "offered . . . employment for Dempsey whereby he could utilize RTC resources to develop the [soccer goal] product." (Am. Compl. ¶ 15.) Plaintiff further alleges that thereafter "Dempsey began working at RTC" and RTC began to pay him. (*Id.* ¶ 16; Opp'n to Nathan Defs. MTD at 8.) These facts sufficiently plead offer, acceptance, and consideration for an employment contract separate from the term sheet.

Next, Plaintiff claims that starting in the fall of 2011 through January 2012, RTC stopped paying him despite the fact that he "continued to report to work every day" and "diligently continued working on the products and the goals of the joint venture." (Am. Compl. ¶¶ 20–21; *see* Opp'n to Nathan Defs. MTD at 8 ("The unpaid period constitutes the breach.").) These allegations are sufficient to plead performance by Plaintiff and breach by RTC.

Finally, although Plaintiff does not detail every term of the contract, at this stage he is only required to plead the "bare essentials" needed to show that he is entitled to relief and to put RTC on fair notice of his claim. *Martin v. Wal-Mart Stores, Inc.*, No. 07 C 3458, 2007 WL 3231414, at *3 (N.D. Ill. Oct. 26, 2007); *Tibor Mach. Prods., Inc. v. Freudenberg-NOK Gen. P'ship*, 967 F. Supp. 1006, 1011 (N.D. Ill. 1997). Here, we can infer the terms that are critical to Plaintiff's breach claim: RTC agreed to pay Plaintiff wages each month in exchange for his work on the products and goals of the proposed joint venture.

Moreover, we find RTC's efforts to claim ignorance of the employment contract fail in light of its *own* allegations in a complaint that it filed against Dempsey in a separate matter. (*See* 2nd Am. Compl., *RTC Indus., Inc. v. Gregory S. Dempsey et. al.*, No. 12 CH 05329 (Cir. Ct. Cook Cnty, May 23, 2012) (attached to Nathan Defendants' motion to dismiss as Exhibit D).) In

RTC's complaint, which it attached to its motion to dismiss in this case, RTC alleged that "Dempsey signed a Freelancer Agreement with RTC in May of 2011" and that "Dempsey worked for RTC from May 2011 through January 2012 working on the Soccer Goal Securement Device for RTC." (*Id*.) RTC attached a version of the Freelancer Agreement to its complaint. The contract clearly states that RTC agreed to compensate Dempsey in consideration for his agreement to the terms therein. (*Id.*) And although neither the contract nor Plaintiff's amended complaint specify the wage amount, RTC does not deny that it paid Dempsey for the first few months, so it must be aware of the agreed monthly wages.

For the reasons discussed above, we conclude that Plaintiff adequately pled breach of contract under the notice pleading standard and we deny RTC's motion to dismiss Count IX.

### E. Unjust Enrichment (Count X)

Finally, Plaintiff alleges that RTC was unjustly enriched based on the same facts as his breach of contract claim. RTC incorrectly argues that, because Plaintiff alleges an express contract, Plaintiff cannot also bring an unjust enrichment claim. (Nathan Defs. MTD Reply at 11–12.) But the cases that RTC itself cites make clear that parties may plead unjust enrichment and breach of contract as alternative theories of recovery. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *Sadler v. Retail Props. of Am., Inc.*, No. 12 C 6433, 2014 WL 2598804, at *20 (N.D. Ill. June 10, 2014). It is true that a plaintiff cannot include allegations regarding an express contract in his unjust enrichment count, or pursue an unjust enrichment theory where there is no dispute that an express contract governs the parties' relationship, but Dempsey does neither. *Cohen*, 735 F.3d at 615. Since RTC disputes the existence of a contract entitling him to compensation, Plaintiff argues that *if* we find no express contract existed, *then* he is still entitled to recover lost wages based on an unjust enrichment theory. (*See* Opp'n to

Nathan Defs. MTD at 9.)  Illinois law clearly permits this type of alternate pleading.  *Cohen*, 735 F.3d at 615 (quoting *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604, 836 N.E.2d 681, 704 (1st Dist. 2005)).

In addition, RTC argues that Plaintiff's unjust enrichment claim should be dismissed because he did not sufficiently plead that he was entitled to compensation from RTC.  (Nathan Defs. MTD at 18.)  We disagree.  "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  *Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 398 Ill. App. 3d 773, 787, 935 N.E.2d 949, 962 (1st Dist. 2009).  As we discussed in Count IX, Plaintiff sufficiently alleged an agreement whereby RTC employed him to work on the soccer goal product in exchange for compensation.  Plaintiff further alleges that he worked for RTC from May 2011 through the end of January 2012, but RTC did not pay him after October 2011.  (Am. Compl. ¶¶ 26, 30, 129; Opp'n to Nathan Defs. MTD at 8.)  Plaintiff claims that, as a result, Defendant unjustly retained the unpaid wages to his detriment and in violation of fundamental principles of justice, equity and good conscience.  (Am. Compl. ¶¶ 131–33.)  These allegations sufficiently state a claim for unjust enrichment under Illinois law.  Thus, we deny RTC's motion to dismiss Count X.

## CONCLUSION

For the reasons discussed above, we grant all Defendants' motions to dismiss Counts III, IV, VII and XI for lack of subject-matter jurisdiction. In addition, we grant Defendants' motions to dismiss Count I against the City, Nathan, and RTC for failure to state a claim. Defendants' motions to dismiss all other counts are denied. Accordingly, Count I against Detective Peluso; Count VIII against the City; Counts II, VI, IX and X against RTC; and Counts II and VI against Nathan remain. It is so ordered.

_____

Marvin E. Aspen
United States District Judge

Dated: Chicago, Illinois
        September 30, 2014